Weldon, J.,
delivered the opinion of the court:
In this case the claimants seek to recover a balance due them, as they allege, upon two contracts made between them and the defendants in 1873 and 1877, as set forth in finding i.
The second contract is a modification of the first, and changes the legal liabilities of the parties as to some of the details of the subject-matter of the agreements.
Four items of claim are made by the allegations of the petition and sought to be maintained by the evidence :
First. Insurance on the value of the cutting of the stock furnished under the first contract.
Second. Expenses paid by the claimants in rescuing vessels wrecked in the transportation of stone, under the second contract, from Hurricane Island to the city of Baltimore.
Third. The cost of transportation of boxing used in the shipment of stone from Hurricane Island to the city of Saint Louis, the claimants alleging that said boxing was wholly for the benefit of the United States, in the protection of the cutting, and not in the protection of the rough stock.
Fourth.' Expenses incurred in Saint Louis in unloading, handling, and reloading granite .shipped by the direction of the agent of the defendants at Hurricane Island to the site of the building. . .
The first item is the most important, amounting, as the petition alleges (including the 15 per cent, profit), to the sum of $43,032.27.
*216 Hurricane Island is situated a few miles off the coast of Maine, the nearest railroad point being Bockland.
The material under the first contract was shipped from the island to the city of Baltimore and thence by rail to the city of Saint Louis. Under the second contract the most of the material was transported by water to Bockland and thence by rail to Saint Louis.
Thevalueof thecutting on which the claimants seek to recover marine insurance, as shown by the finding, was $1,465,323.43; the average cost of insurance where the granite was carried on deck was 4 per cent., and where it was carried below deck was 1£ per cent.
The value of the cutting carried on deck, and on which the insurance was 4 per cent., was $488,574.03; the value of the cutting below deck, and on which the insurance was 1-J, was $976,798.40, which, being increased by the profit of 15 per cent., makes the aggregate something less than the amount claimed by the petitioners.
The findings show that the claimants paid no insurance on either the rough stock or cutting embraced in and furnished under the agreement of April, 1873; but they insist that it is a part of the compensation to be paid them under that contract, and it is wholly immaterial that they assumed the risk themselves. It is insisted by the defendants that neither the rough rock nor the cutting comes within that clause of the agreement which provides for insurance. The clause of the contract affecting the question of insurance is as follows:
“The parties of the second part covenant and agree to and with the party of the first part to furnish from their quarry at Hurricane Island, State of Maine, and deliver at the site of the aforesaid building, as much gray granite as may be required by the plans to be adopted by the Treasury Department for said building.
“And the parties of the second part hereby agree to furnish all the labor, tools, .and materials necessary to cut, dress, and box at the quarry all the granite aforesaid, in such manner as may be directed by the party of the first part.
“ And the party of the first part, acting for and in behalf of the United States, doth covenant, promise, and agree to pay, or cause to be paid, to the said parties of the second part, orto their heirs, executors, administrators, or assigns, in lawful money of the United States, the full cost of the said labor, tools, and materials, and insurance on the same, increased by fifteen (15) per centum thereof.
*217 “ And tbe said parties of the second part farther agree to cut, as well as furnish and deliver, all granite herein contracted for, at such tiroes as may be required by the said party of the first part.”
If the insurance mentioned by the agreement is an insurance on the increased value of the stone because of the cutting, and thereby becomes one of the ingredients or elements of the compensation to be paid the claimants, then it may be the petitioners have the right to recover upon the theory of the petition, and it is wholly immaterial whether they actually insured or not.
In that view they had the right to take the risk themselves; and the insurance being a part of their compensation, their right to recover such part is not defeated by the fact that they did not j)ay insurance to rhird parties.
The substance of the contract is, the parties of the second part agreed to furnish all the labor, tools, and materials necessary to cut, dress, and bos at the quarry the granite; and the parties of the first part agreed to pay the full cost of said labor, tools, and materials, and insurance on the same, increased by 15 per centum thereof.
The materials mentioned in the first part of the undertaking, and which the claimants were bound to furnish, are “ materials necessary to cut, dress, and box” the granite at the quarry, and the word “materials,” when used in the latter part of the undertaking, and upon which insurance is to be paid, it is insisted by the government, refers to and describes the materials mentioned in the first part of the agreement.
It is contended by the claimants that the word “materials” as used in the latter part of the agreement, and to which the words “and insurance on the same” attach, is the material of the stone increased by the labor of cutting.
We have carefully examined the structure of the contract as made by its words, and we deduce, from the terms used and structure of the covenant, that the insurance contemplated by the agreement was not the worth of insurance on the cutting 5 and there being no finding as to the cost of insurance upon any other value them the cutting, the petitioners are not entitled to recover upon that branch of their petition.
Under the original and modified contracts it was the duty of the claimants to deliver the stone at the site of the building in *218 tbe city of Saint Louis, and it makes no difference whether, under either or both, the property in the stone in its improved form was in the claimants or defendants at the time it was started from the quarry and during its transportation.
The modified contract provides “ that the parties of the second part covenant and agree with the party of the first part to furnish from their quarry at Hurricane Island, State of Maine, and deliver at the site of the aforesaid building, such pieces of granite as may be required for the exterior walls of the building aforesaid, as may be designated by the party of the first part, and to cut, dress, and box the same.”
It is provided in the original contract that the party of the second part is “to furnish from tbeir quarry at Hurricane Isl- and, State of Maine, and deli rerat the site of the aforesaid building, as much granite as may be required by the plans adopted by the Treasury Department.”
It being the duty of the petitioners to deliver the stone at Saint Louis, they took upon themselves by the terms of their agreement all the labor and expense incident to the transportation, and if in the transportation any accident happened to the stone increasing the cost of transportation, such cost must fall upon them, as incident to the performance of the contract on their part.
This construction of the obligation of the parties disposes of the liability of the government as to the claim of the petitioners for contribution to the expenses of saving the cargoes of two vessels employed in the transportation of the stone from Hurricane Island to Baltimore.
The next item of claim is for the cost of transportation of the boxing from the quarry to the site of the building, but as the findings show no charges were made for the boxing it is not conceived how the government can be made responsible to the claimants for an item of that kind.
It is not necessary to determine as to what was the duty of the claimants to furnish transportation for boxing, it being sufficient to determine as a fact that no freight was paid for such boxing.
As to the item of $322, the court does not find it sustained by the proof, and upon the whole case it is the judgment of the court that the petition be dismissed.